UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARZUQ AL-HAKIM,

     Plaintiff,

v.                                        CASE No. 8:11-CV-74-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

ORDER

     The plaintiff seeks judicial review of the denial of his claim for

reimbursement of $15,767.83 in supplemental security income payments

that were allegedly misused by two representative payees.[1] The defendant

denied the claim because it concluded that one representative payee did not

misuse any funds and that, if the other representative payee did misuse any

funds, it was not due to the defendant's negligence.  Because the decision

of the Commissioner of Social Security is supported by substantial

evidence and the plaintiff has not identified any reversible error, the

decision will be affirmed.

_____

     [1] The parties have consented in this case to the exercise of jurisdiction by a
United States Magistrate Judge (Doc. 22).

I.

On September 22, 1994, the plaintiff filed a claim for supplemental security income (SSI) payments, alleging that he became disabled due to paranoid schizophrenia and back pain (see Tr. 32). After the defendant denied the claim, the plaintiff appealed the decision to the United States District Court, which ordered the case remanded to the defendant for further proceedings (see id.). Upon remand, the plaintiff received a fully favorable decision (Tr. 28-36).

The law judge found that the plaintiff suffered from paranoid schizophrenia, a congenital cervical spinal anomaly, and substance addiction (cocaine abuse) (Tr. 33-34). The law judge concluded further that, regardless of the plaintiff's drug use, the effects of his paranoid schizophrenia have been disabling since September 22, 1994, the date of his application (Tr. 34, 35). Consequently, the plaintiff was awarded $37,143.83 in retroactive benefits to be disbursed in installments (Tr. 14).

The law judge recommended that a representative payee be named to receive benefits on the plaintiff's behalf (Tr. 36). Consequently, representative payees were assigned to receive payments on the plaintiff's

behalf until 2007, when it was determined that the plaintiff was capable of handling his own funds (see Tr. 267). The plaintiff alleges that three SSI payments, issued between January and July 2004, were misused, and that the defendant should be required to reimburse him $15,767.83 in misused funds because the defendant negligently failed to monitor the representative payees and investigate his allegations of misuse (Doc. 23; Tr. 80-81, 92, 283-84).[2]

In January 2004, Malcolm Youmans, the plaintiff's nephew, was the plaintiff's representative payee (Tr. 137). Youmans received on the plaintiff's behalf a payment of $6,768 (see Tr. 132). The plaintiff alleges that Beverly Taviere, Youmans's mother (and the plaintiff's sister) took the check from Youmans's post office box (Tr. 222-23, 276-77). He alleges further that Taviere forged Youmans's name on the check, and placed the funds in her bank account (Tr. 277).

However, Youmans never claimed the check was stolen (see Tr. 116). Further, in denying that the payment was stolen, Youmans acknowledged that a false claim regarding the proceeds of a government

---

[2] Although the plaintiff originally requested reimbursement of $22,767.83, at the hearing he reduced his request for reimbursement by $7,000 (see Tr. 283, 284).

check is a federal offense (see id.).  Significantly, the plaintiff stated in a notarized affidavit dated April 14, 2004, that he "ask[s] to not criminalize [his] sister Beverly C. Taviere because this is.... a family matter that is resolved to my satisfaction.   Please cease and desist your investigation" (Tr. 117).  The defendant investigated the plaintiff's allegations, and concluded that no misuse occurred (Tr. 99).

At the plaintiff's request, Patricia Durham, a family friend, was selected as a subsequent representative payee (see Tr. 268).   Durham received in July 2004 two SSI back payments totaling $15,999.83 (Tr. 132-33, 178-79).   On November 8, 2004, the plaintiff requested that Durham be investigated for misusing his benefits (Tr. 46).   Specifically, the plaintiff asserted that he had been incarcerated from March 2004, until September 28, 2004, and that he had not benefitted from over $11,000 of the funds received by Durham (id.).[3]

The defendant promptly contacted Durham regarding the plaintiff's allegations (see Tr. 48).  Durham responded in correspondence dated November 12, 2004, that she regularly provided the plaintiff with

---

[3] The plaintiff has a lengthy criminal record and numerous incarcerations (see Tr. 145-77).

receipts for expenses, and listed $15,016.24 in expenditures made on the plaintiff's behalf, including payments for his credit card, parking tickets, court fees, collect telephone calls from the jail, money for the jail canteen, personal items for himself and his daughter, and a $5,000 cashier's check she gave to the plaintiff (Tr. 48-51). The defendant concluded after an investigation that there was no misuse of the plaintiff's funds (see Tr. 105).

During 2005-2007, the plaintiff continued to allege that these funds were misused (see Tr. 59, 61, 64-65, 68, 70-81, 85, 90-92, 102, 104). The defendant responded to the plaintiff that his allegations had been "developed thoroughly," and that the findings of no misuse were discussed with him at the Valrico Social Security Administration Office (Tr. 86). In particular, the defendant informed the plaintiff that "[b]oth of the former Representative Payees provided documentation showing that the funds were spent in the Beneficiaries best interest" (Tr. 99; see also Tr. 105). It is opined by Youmans, and Rudolph Harris, the plaintiff's father, that the plaintiff's reassertion of these allegations is motivated by his severe dependency on crack cocaine (Tr. 114, 116).

After the plaintiff's claims were denied initially and on reconsideration, the plaintiff requested an administrative hearing, which was held on April 7, 2009 (Tr. 86, 90-92, 99-111, 249).[4]  At the hearing, the plaintiff, and his estranged wife, Cassandra Al-Hakim, testified (see Tr. 250).[5]  Raynaldo Lopez, a representative from the Office of Disability Adjudication and Review, also commented at the hearing regarding this matter (Tr. 251-52).

The law judge concluded that there was no misuse of funds by Youmans (Tr. 13, 17).  Further, the law judge found that there was no negligent failure by the Social Security Administration to investigate or monitor either representative payee which resulted in misuse of funds (id.).  Thus, the law judge stated that, "[t]he record has a myriad of evidence which supports that the Administration investigated and contacted all the parties involved, and made numerous contacts with the claimant" (Tr. 17).  He added that, "[i]f there was misuse of any funds, such did not result from any

---

[4] The plaintiff was informed of his right to seek counsel, but decided to proceed *pro se* (Tr. 252-53).

[5] The plaintiff's wife, who suffers from several mental conditions, testified that the plaintiff told her that Taviere admitted taking the January 2004 payment (Tr. 288, 289).  However, she did not demonstrate that she had any personal knowledge of this information (Tr. 289).

lack of monitoring or investigating" (id.).   Therefore, the law judge
concluded that the defendant was not liable to the plaintiff for
reimbursement of any purportedly misused SSI funds (id.).   The Appeals
Council let the decision of the law judge stand as the final decision of the
Commissioner (Tr. 5).   In doing so, it rejected the plaintiff's complaint that
the record was not fully developed because the law judge did not subpoena
certain witnesses (Tr. 6).

II.

The Social Security Act provides that, for those beneficiaries
who are unable to direct the management of their own affairs, the Social
Security Administration may make payment of their benefits to a
"representative payee." Cannon v. Apfel, 213 F.3d 970, 971 (citing 42
U.S.C. 1383(a)(2)(A)(ii)(I)). A representative payee has a responsibility to
use those benefits in the best interests of the beneficiary.   20 C.F.R. §§
416.635(a); 416.640(a).

A representative payee who misuses the benefits is responsible
for repayment of those benefits.   20 C.F.R. §416.641(a). However, when
restitution is not obtained from the payee, the Social Security Administration

is liable to repay the misused benefits when its "negligent failure ... to investigate or monitor a representative payee results in misuse of benefits by the representative payee." 42 U.S.C. 1383(a)(2)(E). The term "negligent failure" also includes the defendant's failure to follow established procedures in its investigation or monitoring of a representative payee, or its failure to investigate timely a reported allegation of misuse. 20 C.F.R. §416.641(d)(1), (2).

A determination by the Commissioner that a claimant is not entitled to reimbursement must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft,

386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.   Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not entitled to reimbursement.   However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.   Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff argues that substantial evidence does not support the law judge's findings with respect to the January 2004 and the July 2004 payments (Docs. 23, 43). He also contends that his due process rights were violated because the law judge did not subpoena his requested witnesses to testify at the administrative hearing (Doc. 43). These contentions do not support relief.

A.   January 2004 SSI payment. The plaintiff argues that substantial evidence does not support the law judge's determination that his January 2004 SSI payment was not misused (Doc. 26, p. 2). The plaintiff testified at the hearing that Taviere, the mother of representative payee Youmans, stole his January 2004 benefits check (Tr. 273-74). He stated that Taviere forged Youmans's signature on the check, and deposited the funds into her bank account (id.; Doc. 43, p. 3). The plaintiff does not accuse Youmans of any wrongdoing (Tr. 273).

The law judge rejected the plaintiff's claim (Tr. 17). The law judge explained that the plaintiff's claim is belied by Youmans, who affirmatively disputes the plaintiff's theft allegation (id.; see Tr. 116). The law judge reasoned further that, if Taviere stole the check, then the

representative payee would have reported it (Tr. 17). However, as recently as 2008, Youmans maintained that there was no theft (see Tr. 116). Furthermore, the law judge emphasized that the plaintiff himself requested in 2004 that the investigation of Taviere be ceased, averring that this was "a family matter that had been resolved to his satisfaction" (Tr. 17, 117). Additionally, the law judge stated that the Social Security Administration represented that it had investigated the matter, after which two Social Security Administration employees concurred that no misuse was discovered (Tr. 17; see Tr. 86, 99).

The only evidence presented in support of the plaintiff's assertion that Taviere misappropriated these funds was the plaintiff's testimony, and the law judge found that the plaintiff was not credible (Tr. 16-17). The law judge explained that the plaintiff's credibility was undermined by his extensive criminal record, including convictions for crimes of dishonesty; his lack of candor with the court regarding his financial status; and his drug addiction (id.).[6] The law judge also

---

[6] The plaintiff admits that he misrepresented his financial status in a financial affidavit submitted to the court, although he claims that it was an inadvertent error (Doc. 44, p. 3).

considered that the plaintiff's paranoid schizophrenia affects the credibility of his allegations (see Tr. 16).

It is appropriate to add that the plaintiff has not set forth any basis for his allegations that Taviere stole the check and then forged it. Thus, for example, he does not state that he saw Taviere take the check. Further, he does not assert that Taviere admitted to him that she had taken the check and forged it.  He also does not say that he has seen the check with the alleged forged signature.  In other words, the plaintiff's accusation against Taviere is completely conclusory.

These reasons, which are supported by substantial evidence, amply justify the law judge's decision to discount the plaintiff's credibility. In this circumstance, a reviewing court is not authorized to disturb that finding.  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)("credibility determinations are the province of the ALJ"). Significantly, that credibility determination is not challenged by the plaintiff (see Doc. 18 (Scheduling Order directs that the plaintiff must identify the discrete grounds upon which the administrative decision is challenged and support the challenge with citations to the record and the governing legal standards)).

In sum, the law judge's conclusion that there was no misuse of the January 2004 SSI payment for $6,768 is supported by substantial evidence. Moreover, the law judge gave ample justification for discounting the plaintiff's testimony to the contrary.

In addition, the plaintiff's claim is defeated by the law judge's finding that "the evidence does not support that the Administration was negligent in its responsibilities" and that, "[i]f there was misuse of any of the funds, such did not result from any lack of monitoring or investigating" (Tr. 17). As indicated, in order for the defendant to be liable in this circumstance, the plaintiff must show that it was the defendant's negligent failure to monitor the payee, or investigate the accusation of misuse, that resulted in the misappropriation of the funds. See 42 U.S.C. 1383(a)(2)(E). The plaintiff does not discuss in his memoranda this requirement at all with regard to the January 2004 payment (see Doc. 23, pp. 2-3; Doc. 43, pp. 1-4).

Therefore, the plaintiff has clearly failed to show that the law judge erred in concluding that the Social Security Administration was not liable to reimburse him for the alleged misappropriation of the January 2004 SSI payment.

B. <u>July 2004 SSI payments</u>. As representative payee, Durham, a family friend, received in July 2004 two retroactive SSI payments on the plaintiff's behalf totaling $15,999.83 (see Tr. 13). The plaintiff argues that the law judge erred in finding that the defendant did not negligently fail to monitor payee Durham or investigate his claim that she misused his July 2004 SSI benefits (Doc. 43, p. 2).[7]

On November 4, 2004, the plaintiff requested that the defendant investigate Durham's use of these funds. In response, the defendant promptly commenced an investigation, and received from Durham correspondence listing expenses on the plaintiff's behalf totaling $15,016.24 (Tr. 48). At the administrative hearing, the plaintiff argued that Durham had not provided receipts for the expenditures and that she did not receive permission from him for these expenditures (Tr. 270-71). The plaintiff also

---

[7] The plaintiff testified initially that Durham took his money and "[s]pent it all on herself" (Tr. 269). He later admitted that Durham had given him a cashier's check in the amount of $5,000, and stated that he gave Durham $2,000 as a gift (Tr. 280, 282). However, the plaintiff then stated that Durham stole the $5,000 from his belongings when Durham assisted the plaintiff in removing his items from a drug rehabilitation facility (Tr. 277-78, 280). Nevertheless, at the hearing the plaintiff asserted that he was not seeking $7,000 of the funds entrusted to Durham on his behalf (Tr. 284).

generally questioned how Durham could spend funds to his benefit when he was in jail (id.).

Although the law judge did "not find that there was no misuse of funds by Ms. Durham," he determined that, "if any misuse of funds did occur, such misuse was not caused by any negligence on the part of the Administration" (Tr. 17). In this regard, the law judge noted that the record reflected that the Social Security Administration investigated and contacted all the parties involved, and made numerous contacts with the claimant regarding these allegations (id.). The law judge's conclusion is supported by substantial evidence.

The record reflects that the defendant commenced an investigation within days of receiving the plaintiff's allegation that Durham misused his SSI payments (see Tr. 48-51). As the law judge discussed, Durham provided a "detailed breakdown of how she used $15,016.24 of the claimant's money" (Tr. 15). Among other expenses, Durham specified that she used the SSI payments to pay for the plaintiff's court fees, credit card and telephone bills, vehicle storage, money for the jail canteen, and personal items for the plaintiff and his daughter (Tr. 48-51).

The law judge stated further that the Social Security Administration examined the evidence, and found no misuse (Tr. 16). Thus, the Social Security Administration stated that the plaintiff's allegations had been "developed thoroughly" and that two Social Security Administration employees concurred that there was no misuse discovered (Tr. 86). The Social Security Administration also sent the plaintiff correspondence in September 2007 stating (Tr. 105):

> In 2004 these allegations of misuse were thoroughly investigated by the SSA office in Valrico, FL and a determination was made that no misuse occurred. Ms. Durham provided the investigators in the Valrico office complete documentation of her expenditures on your behalf and no evidence of misuse was found. No additional evidence of misuse has been provided....

(See also Tr. 99).

The plaintiff does not present a cogent argument which undermines the law judge's findings. Rather, the plaintiff argues in a conclusory manner that the defendant failed to monitor Durham and "apply regulations" which resulted in the misuse of his funds (Doc. 23, p. 2). The plaintiff's allegations of wrongdoing appear to be based on Durham's failure to produce receipts for expenditures made on his behalf, and that the plaintiff

did not authorize Durham to spend the funds because he was incarcerated (Doc. 43. p. 4; see also Tr. 270-71).

However, these contentions are beside the point.   They do not show that the defendant negligently failed to follow its procedures in monitoring and investigating Durham, which was the issue the law judge found dispositive.   Rather, they go to the issue of whether Durham misused the funds, a question which the law judge pretermitted.

Initially, it is noted that the plaintiff's contentions do not even establish that Durham misused the funds.   Thus, the regulations do not require the payee to produce receipts. 20 C.F.R. §416.635(e).   Rather, a representative payee is required to submit a written report accounting for the benefits received and, if requested by the agency, make all supporting records available for review. Id. Durham submitted a written accounting. Further, the law judge noted that Durham said she did not have receipts for the expenses because she gave them to the plaintiff, and that she did not keep copies of the receipts because she had not foreseen that the plaintiff would accuse her of wrongdoing (Tr. 15).   Moreover, the plaintiff has not specifically identified any expenditure that is disputed, so that receipts do not appear necessary.

Additionally, the Social Security Administration does not require the representative payee to obtain the beneficiary's permission before making an expenditure on the beneficiary's behalf, particularly since, as in this case, the claimant may be mentally impaired. Rather, as the Commissioner points out, the regulation only requires that the payee expend funds for the beneficiary's use, and in a manner the payee deems to be in the beneficiary's best interest. 20 C.F.R. §416.635(a).

In all events, wholly aside from whether Durham misused the funds, there is no evidence in the record that contradicts the law judge's finding that, "if any misuse of funds did occur, such misuse was not caused by any negligence on the part of the Administration" (Tr. 17). The plaintiff states that, on November 4, 2004, he wrote to the Social Security Administration and requested an investigation of Durham's expenditures (Doc. 23, p. 2). There is nothing in the record which even suggests that the agency had any reason to question Durham's handling of the funds prior to that point.

After receiving the plaintiff's request, the agency promptly investigated the matter. By November 12, 2004, Durham had submitted a letter in which she specifically accounted for $15,016.24 out of the total

funds of $15,999.83 (Tr. 50-51).   In the letter, Durham, feeling aggrieved by the accusation of misuse, asked to be relieved of her role as representative payee (Tr. 48), and that was done.   Under these circumstances, there is simply no evidentiary basis for a contention that the agency was negligent in its monitoring or investigation of Durham's handling of the funds.

      C.  <u>Due Process</u>.   Finally, the plaintiff argues that his due process rights were violated because the law judge did not subpoena his requested witnesses to testify at the administrative hearing (Doc. 23, p. 3; Doc. 43, p. 5).   In his reply memorandum, the plaintiff states that he requested subpoenas for his father, Durham, and David Bader (a Social Security Administration employee who investigated the plaintiff's allegations) (Doc. 43, p. 5).

      As the defendant points out, a law judge may issue subpoenas for the appearance and testimony of witnesses "[w]hen it is reasonably necessary for the full presentation of a case."   20 C.F.R. §416.1450(d)(1). The party requesting the subpoenas must provide locating information, state the important facts that the witness is expected to provide, and indicate why the facts could not be proven without issuing a subpoena.   20

C.F.R. §416.1450(d)(2). The law judge's failure to subpoena the plaintiff's requested witnesses is not error because the plaintiff failed to inform the law judge of the facts these witnesses would provide, and set forth why a subpoena was necessary (see id.).

In any event, the plaintiff has failed to show he was prejudiced by the absence of the witnesses.   George v. Astrue, 338 Fed. Appx. 803 (11th Cir. 2009).   "[T]here must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record"   Id. at *2.

In his reply, the plaintiff makes the conclusory and unsupported assertion that these witnesses would have provided testimony that would have changed the outcome of the case (Doc. 43, p. 6). For example, the plaintiff baselessly claims that Social Security Administration employee Bader would have testified that he did not follow Social Security Administration regulations (id., p. 5), even though the record belies such an assertion.   Further, the plaintiff asserts that his father would have recanted his comments made in a 2008 letter that the plaintiff's allegations were motivated by his drug addiction and mental illness (id.).   However, this

letter did not play a significant role in the law judge's findings and, if the plaintiff's father was willing to testify on his behalf, there was no subpoena necessary. Moreover, the plaintiff argues that "witnesses" would have testified that Durham picked up his luggage at the drug center and that she "did not purchase items alleged" (id.). However, it is undisputed (and irrelevant) that Durham picked up his luggage at a drug treatment center. Similarly, even if there were witnesses who would testify that Durham misused his funds, that would not change the law judge's conclusion, because the law judge did not find that Durham did not misuse the funds, only that any misuse was not a result of the defendant's negligence. In sum, the plaintiff has not shown that he was prejudiced by the defendant's failure to subpoena these witnesses to the administrative hearing. Accordingly, the plaintiff has failed to establish that his due process rights were violated with regard to the administrative hearing.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED.   The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 3ʳᵈ day of February, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE